IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANNA C. MOORE
a minor child, by and through her
mother and natural guardian Pamela
Moore,

    Plaintiff,

      v.

    CIVIL ACTION FILE
    NO. 1:07-CV-631-TWT

M.D. RHONDA MEDOWS
in her official capacity as
Commissioner of the Department of
Community Health,

    Defendant.

## OPINION AND ORDER

This is an action for injunctive and declaratory relief. It is before the Court on the Defendant's Motion to Dismiss or Stay Proceedings Based Upon Abstention Grounds [Doc. 8]. For the reasons set forth below, the Defendant's Motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

The Plaintiff Anna C. Moore is a twelve year old Medicaid beneficiary living in her family's home in Danielsville, Georgia. Due to a stroke she experienced in utero, the Plaintiff is severely disabled and suffers from a host of chronic conditions,

including spastic quadriplegic cerebral palsy, refractory seizure disorder, mental retardation, gastroesphageal reflux disease, cortical blindness, dysphagia, bone cartilage disease, scoliosis, kyphosis, and restrictive lung disease.  (Compl., ¶ 8.) In summary, she "has severe physical disabilities including spinal deformities in two directions, she is blind and non-verbal, she has seizures that are difficult to control with multiple medications, she has difficulty swallowing even her own saliva, she has difficulties with breathing consistently, she is cognitively impaired, and she has a host of other physical manifestations and medical complications as a result of the damage in her brain." (Id., ¶ 9.)  She requires around the clock monitoring, care and treatment.

Since 1998, when she was three years old, the Plaintiff has received Medicaid-funded nursing services from the Georgia's Department of Community Health ("the Department").  Under the Medicaid Act, a participating state is required to provide certain categories of care to eligible patients, including early and periodic screening, diagnostic and treatment services ("EPSDT").  Following a 1989 amendment to the Act, EPSDT now includes any "other measures ... to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan."  42 U.S.C. § 1396d(r)(5).

In Georgia, a medically fragile child who is enrolled as a member of the Georgia Pediatric Program[1] is also eligible to receive private duty nursing services.[2] Over the course of the time the Plaintiff has been enrolled in the Georgia Pediatric Program, the Department has approved her to receive private duty nursing services in her home.  On November 15, 2006, the Department notified the Plaintiff that her hours of approved skilled nursing services were being reduced from 94 to 84 hours per week effective December 7, 2005.  Through her mother and her treating physician, she immediately appealed this reduction, and a hearing was scheduled.  The day before the hearing, however, she withdrew her request and filed this section 1983 action, seeking declaratory and injunctive relief against the Department.  She claims that the Department's policies conflict with the EPSDT provisions in the Medicaid Act and violate the Constitution.   The Defendant now moves to dismiss or stay this proceeding, arguing that this Court should abstain from hearing the Plaintiff's claims.

---

[1]This is a Georgia Medicaid program.

[2]Private duty nursing service is defined as "nursing services for recipients who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility."  42 C.F.R. § 440.80.  These services are provided by a registered nurse or nurse practitioner under the direction of the recipient's physician at either the recipient's home, a hospital, or a skilled nursing facility.  Id.

## II. MOTION TO DISMISS STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears that there is no plausible entitlement to relief. Bell Atlantic Corporation v. Twombly, 550 U.S. ___ (2007). Factual allegations must be enough to raise a right to relief above the speculative level. Id. In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id.

## III. DISCUSSION

### A. Abstention

Notwithstanding a federal court's "virtually unflagging obligation" to decide matters properly before it, the Supreme Court has identified certain narrow areas where abstention is appropriate. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976). Abstention, however, remains the exception and not the rule. Id. at 813. Here, the Defendant argues that this Court should abstain from

deciding this case because of principles outlined in two Supreme Court cases, <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943) and <u>Younger v. Harris</u>, 401 U.S. 37, 55 (1971). The Court will separately address each of these abstention doctrines.

      1. <u>Burford</u>

The Supreme Court has summarized the <u>Burford</u> abstention doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

<u>New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans</u>, 491 U.S. 350, 361 (1989) ("NOPSI") (<u>quoting</u> <u>Colorado River</u>, 424 U.S. at 814). There is, however, "no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." <u>Zablocki v. Redhail</u>, 434 U.S. 374, 380 n.5 (1978). In applying <u>Burford</u>, a court should consider the following factors: (1) the federal importance of the constitutional challenge; (2) "the 'intricacy' and importance of the state's regulatory scheme"; (3) whether the state has created a centralized system of judicial review allowing its courts to develop expertise in interpreting the scheme and the industry; (4) the speed and adequacy of state court review; and (5) the

likelihood of "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy." Goodhart v. Board of Visitors of University of Virginia, 451 F. Supp. 2d 804, 807-08 (W.D. Va. 2006) (quoting NOPSI, 491 U.S. at 360); see also Siegel v. LePore, 234 F.3d 1163, 1173 (11th Cir. 2000) (stating that one of the Burford doctrine's central purposes was "to protect complex state administrative processes from undue federal interference"). The Eleventh Circuit has further made clear that Burford is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Siegel, 234 F.3d at 1173 (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959)).[3]

The Defendant argues that because the Plaintiff's claims arise from a state regulatory scheme and "bear upon policy matters of substantial importance to the

---

[3]The Defendant fails to identify a single Eleventh Circuit decision where the court determined that Burford abstention was appropriate. In fact, the Eleventh Circuit has consistently declined to order Burford abstention. See, e.g., Boyes v. Shell Oil Products Co., 199 F.3d 1260, 1266 (11th Cir. 2000) ("Abstention under *Burford* ... is rarely, if ever, appropriate when federal law preempts state law"); Rindley v. Gallagher, 929 F.2d 1552, 1557 (11th Cir. 1991) (finding "[n]o overriding state interests or special competence or threat to administrative integrity" implicated in the plaintiff's request that a provision in a state scheme regulating professional licensing be modified or invalidated); BT Inv. Managers, Inc. v. Lewis, 559 F.2d 950, 955 (5th Cir. 1977) (reversing the district court's decision to abstain because there was no "overriding state interest, special state competence, or threat to Florida's administration of its own affairs" by the court's ruling on a challenge to a provision in the Florida banking code).

administration of Georgia's Medicaid health care program," abstention is required in this case. (Def.'s Mot. to Dis., at 8.) The Court cannot agree. In considering the factors discussed above, almost none promote the application of <u>Burford</u> under these circumstances. This is not an issue of essentially local concern, but involves rather "federal funds and federal regulation in an area in which the federal government has taken a keen interest." <u>Meachem v. Wing</u>, 77 F. Supp. 2d 431, 443 (S.D. N.Y. 1999); <u>see also</u> <u>Arkansas Medical Soc., Inc. v. Reynolds</u>, 6 F.3d 519, 529 (8th Cir. 1993) ("[T]he Medicaid laws are routinely interpreted by federal courts and no specialized knowledge of state law is required."). The initial cases in which this doctrine was applied, moreover, shared several characteristics in common. One characteristic was the existence of a complex state regulatory scheme and the designation of a specific state forum to resolve disputes. <u>See</u> <u>Burford</u>, 319 U.S. at 331 (abstaining where the only question before the court was the Texas Railroad Commission's application of the state's complex oil and gas conservation regulations and Texas had a centralized system of judicial review of commission orders); <u>Alabama Pub. Serv. Comm'n v. Southern Ry. Co.</u>, 341 U.S. 341 (1951) (abstaining where a railroad sought to enjoin enforcement of an Alabama Public Service Commission order denying it the ability to discontinue unprofitable rail lines, an order that was appropriate for appeal before the Circuit Court of Montgomery County). Such considerations are absent here. The

Plaintiff's claims implicate not a complex state regulatory scheme, but an important federal interest embodied in the Medicaid Act.  See Meachem, 77 F. Supp. 2d at 443. There is also no central state court provided with sole authority to review all Medicaid claims.  To the contrary, as the Defendant concedes, after the OSAH proceeding the Plaintiff could have challenged that decision in either Fulton County Superior Court or in her home county superior court. O.C.G.A. § 49-4-153(c).

The Court also finds evidence suggesting that the speed of a state court review in this instance will not be adequate.  Georgia law provides that after a claimant appeals a denial of benefits, the dispute goes before an Administrative Law Judge ("ALJ").  The ALJ conducts hearings and then has 30 days from the close of the record to issue a decision, "except when it is determined that the complexity of the issues and the length of the record require an extension of this period...." O.C.G.A. § 50-13-41.  In the event that the decision is adverse to the claimant, she can file a written request for appeal to the Commissioner of the Department within 30 days. Id. § 49-4-153(b)(1).  The Department then has 30 days to issue a final decision including a findings of fact and conclusions of law.  Only after receiving this final decision can a claimant file a petition in a Georgia superior court.  Id. § 49-4-153(c).     A recent case from the Georgia Court of Appeals demonstrates the potential length of these proceedings.  In Department of Community Health v. Freels, 258 Ga. App. 446

(2002), a Medicaid beneficiary suffering from cerebral palsy petitioned the Department on September 3, 1999, to reimburse him for therapy related to his condition. Almost three months later, the Department denied his petition. An ALJ subsequently ruled against him and the Department issued a final denial. It was not until October 10, 2001, over two years after the initial petition was filed, that the superior court reversed the ALJ's decision. See Freels v. Commissioner, 2001 WL 1809412, at *1 (Ga. Super. Ct. October 10, 2001). Where, as here, the Plaintiff has specifically alleged that the Department's reduction in her approved registered nursing hours will place her at great risk of harm, a two year delay in ruling on this issue is simply unacceptable. (Compl., ¶ 13.) Indeed, the Court has already granted the Plaintiff a temporary restraining order enjoining the Department from reducing the Plaintiff's skilled nursing care hours.

The Court does not find, finally, that its determination of this dispute carries a strong likelihood of delay, misunderstanding of local law, or needless federal conflict with state policy. As discussed previously, given the potential for a protracted administrative proceeding, resolution by this Court is unlikely to take any longer than if the case had gone before a state court. Moreover, because this claim arises out of a federal statute, there is no possibility that any state law will be misapplied. The potential does exist, however, that a ruling in this case will create an inequity in the

administration of the state's scheme.  See Levy v. Lewis, 635 F.2d 960, 964 (2d Cir. 1980).  Yet given the potential danger to the health of the Plaintiff created by this denial of service, the Court finds that such conflict is hardly unnecessary.  For all these reasons, the Court concludes that abstaining under Burford is inappropriate in this case.

      2. Younger v. Harris

The Defendant also contends that this Court should abstain from hearing this case based on the doctrine established in Younger v. Harris, 401 U.S. at 55.  There, the Supreme Court, relying on principles of comity and federalism, determined that federal interference in state criminal proceedings must be prohibited absent a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Id.   The doctrine has since been applied to state civil and administrative proceedings as well.  NOPSI, 491 U.S. at 374.  To abstain under Younger, the following elements must be established: (1) an ongoing proceeding that is judicial in nature; (2) the implication of important state interests; and (3) a state proceeding that provides adequate opportunity for the plaintiff to raise constitutional challenges.  See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

The first of these factors proves dispositive in this instance.  The Defendant claims that an administrative proceeding was pending at the time the Plaintiff filed this action, and that she failed to exhaust her administrative remedies by appealing the decision to reduce her skilled nursing services.  The Plaintiff points out, however, that exhaustion of state administrative remedies is not a prerequisite for claims brought under section 1983.  See Patsy v. Board of Regents of State of Fla., 457 U.S. 496 (1982); Monroe v. Pape, 365 U.S. 167 (1961).  Supreme Court precedent on this issue is somewhat ambiguous.  Despite the Court's holding in Patsy and Monroe v. Pape that exhaustion is not required under section 1983, other opinions have found abstention appropriate in section 1983 cases.  See Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc., 477 U.S. 619 (1986); Huffman v. Pursue, Ltd., 420 U.S. 592 (1975).  In Dayton Christian Schools, for example, the Court applied Younger to a pending state administrative proceeding.  In that case, a teacher filed a civil rights complaint with the Ohio Civil Rights Commission alleging that her private school employer sexually discriminated and retaliated against her.  The Commission, upon finding probable cause to believe the teacher's allegations, sent a proposed Conciliation Agreement and Consent Order to the school.  Id. at 625.  When Dayton failed to respond, the Commission initiated an administrative proceeding against it, and Dayton then filed a 1983 action alleging that any investigation of its hiring

practices would violate the Religion Clauses of the First Amendment.  Applying

<u>Younger</u>, however, the Court found that the principles of comity and federalism

rendered abstention appropriate because Dayton would have an adequate opportunity

to raise its constitutional claims in the administrative proceeding.  <u>Id.</u> at 628.

Lower court decisions have interpreted <u>Dayton Christian Schools</u> as

establishing a controlling distinction between remedial and coercive administrative

proceedings.  <u>See, e.g.</u>, <u>Moore v. City of Asheville</u>, 396 F.3d 385, 394 (4th Cir. 2005);

<u>Majors v. Engelbrecht</u>, 149 F.3d 709, 712 (7th Cir. 1998); <u>O'Neill v. City of</u>

<u>Philadelphia</u>, 32 F.3d 785, 791 n.13 (3d Cir. 1994); <u>Kercado-Melendez v.</u>

<u>Aponte-Roque</u>, 829 F.2d 255, 260 (1st Cir. 1987); <u>Goodhart</u>, 451 F. Supp. 2d at 810-

11.  As explained by the First Circuit:

> [I]n <u>Patsy</u> the state proceeding was an option available to the federal
> plaintiff on her own initiative to redress a wrong inflicted by the state. In
> <u>Dayton Christian Schools</u> and the other abstention cases noted above, the
> federal plaintiffs sought to enjoin a pending state proceeding which they
> did not initiate, but in which their presence was mandatory.

<u>Kercado-Melendez</u>, 829 F.2d at 260.  Accordingly, it was the coercive nature of the

administrative proceeding in <u>Dayton Christian Schools</u> that permitted the Court to

force the claimants to abide by the administrative framework rather than seeking federal relief under section 1983.[4]

This Court finds that because the Plaintiff initiated the administrative proceedings, the action was remedial rather than coercive.  On this point, the First Circuit's decision in <u>Kercado-Melendez</u> is instructive.  There, a school superintendent, who was allegedly fired because of her political affiliation, sought section 1983 relief from her termination.  Originally, she appealed the school district's decision to fire her, but later opted to withdraw that appeal and file a federal action.  The First Circuit rejected the defendant's contention that <u>Younger</u> applied, finding the case distinct because the claimant had not asked the federal court "to enjoin any state civil proceeding pending against her."  <u>Id.</u> at 259.  Indeed, such a request would have been futile because the plaintiff had already been terminated.  Similarly here, the claimant is seeking relief from an administrative action that is already completed.  The fact that the Plaintiff has the right to an administrative appeal does not dictate that a section 1983 claim is inappropriate.

---

[4]The Defendant further cites <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592 (1975) as evidence that the Supreme Court requires a plaintiff to pursue fully appellate remedies associated with a pending state proceeding before filing a 1983 action.  This case is unpersuasive in the present instance, however.  <u>Huffman</u> involved a federal appeal by a theater that had been ordered closed pursuant to an Ohio nuisance statute, clearly a coercive proceeding.

The Court finds unpersuasive the Defendant's argument that "this Court should look to the substance and nature" of the Department's administrative proceeding and view it as coercive. (Def.'s Mot. to Dis., at 16.)  Specifically, the Defendant claims that:

> At first blush, it may appear that the administrative proceeding was remedial because it sought to "remedy" the allegedly wrongful decision to reduce [the Plaintiff's] benefits.  However, such a conclusion has only superficial appeal and ignores the coercive nature of the state action which triggered Plaintiff's right to request the administrative hearing before OSAH.

(Id.)  As the Plaintiff has pointed out, however, the Defendant appears to have lifted this language, almost verbatim and without citation, out of a recent Kansas District Court opinion.  See Brown v. Day, 477 F. Supp. 2d 1110, 1116-17 (D. Kan. 2007) ("At first blush, it might appear that the administrative proceeding was remedial because it sought to 'remedy' the allegedly wrongful decision to terminate benefits. This conclusion has superficial appeal, but it ignores the coercive nature of the state action which triggered plaintiff's right to request an administrative hearing.").  A thorough reading of Brown evidences important distinctions with the present dispute and likely answers the question of why the Defendant failed to cite it.  In Brown, a disabled adult brought suit alleging that the state of Kansas had violated federal law by disqualifying her from medicaid benefits.  In discussing the distinction between remedial and coercive proceedings, Brown acknowledged several courts' conclusions

that this distinction was "a procedural one which depends on which party initiated the administrative proceeding." Id. at 1115 (citing Kercado-Melendez, 829 F.2d at 260 and Cooper v. Bombela, 34 F. Supp. 2d 693, 696 n.6 (N.D. Ill. 1999)).  The court then contrasted these cases with several circuit opinions that had identified as "coercive" state administrative proceedings brought by the claimant in response to state enforcement efforts.  Id. (discussing Moore, 396 F.3d at 394 and O'Neill, 32 F.3d at 791 n.13).  In discussing O'Neill, cited by the Defendant here, the Kansas district court noted with approval the Third Circuit's distinction between "remedial" and "coercive" proceedings, defining the former as any action "brought by the plaintiff to vindicate a wrong which had been inflicted by the state" and the latter as one "initiated by the State, before a state forum, to enforce a violation of state law."  Id. at 1116 (citing O'Neill, 32 F.3d at 791 n.13).  The court ultimately concluded that the present proceeding was coercive because "[u]nder Kansas law, the termination of benefits to ineligible recipients is an enforcement mechanism designed to address violations of state Medicaid law."  Id. at 1117.

Brown thus further demonstrates why the proceeding here was remedial. Clearly, it was the Plaintiff who initiated this action to remedy a wrong–the reduction in private nursing hours–inflicted upon her by the state of Georgia.  Accordingly, once the Department issued an order denying benefits, that decision was final and the

proceeding was not ongoing.  Rather, the Plaintiff had the option to appeal if she so
chose.  That she first decided to appeal and then later withdrew her appeal does not
convert this into an ongoing proceeding.  The Court thus does not find this case to be
one where <u>Younger</u> abstention is appropriate and concludes that dismissal under these
circumstances is unwarranted.

    B. <u>Supremacy Clause</u>

    The Defendant additionally argues that the Plaintiff has no right of action under
the Constitution's Supremacy Clause.  The Court agrees and finds that no such
violation has occurred here.  The Supremacy Clause concerns itself with the federal
preemption of inconsistent state laws.  <u>See</u> <u>Lorillard Tobacco Co. v. Reilly</u>, 533 U.S.
525, 540 (2001) ("Article VI, cl. 2, of the United States Constitution commands that
the laws of the United States 'shall be the supreme Law of the Land; ... any Thing in
the Constitution or Laws of any State to the Contrary notwithstanding.'").  Here, the
Plaintiff does not allege that any Georgia law is inconsistent with federal law, only
that the Defendant has misapplied 42 U.S.C. § 1396(r)(5).  Reversal of the
Defendant's decision would thus be warranted under state or federal law, but not due
to any provision of the Constitution.  Accordingly, the Plaintiff's constitutional claim
is dismissed.

IV. <u>CONCLUSION</u>

For the reasons set forth above, the Defendant's Motion to Dismiss or Stay Proceedings Based Upon Abstention Grounds [Doc. 8] is GRANTED in part and DENIED in part.

SO ORDERED, this 27 day of June, 2007.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge