IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANNA C. MOORE
a minor child, by and through her
mother and natural guardian Pamela
Moore,

    Plaintiff,

      v.

                              CIVIL ACTION FILE
                              NO. 1:07-CV-631-TWT

DAVID A. COOK
in his official capacity as
Commissioner of the Department of
Community Health,

    Defendant.

ORDER

      This is an action against David A. Cook, in his official capacity as Commissioner of the Georgia Department of Community Health, for violating the Medicaid Act. It is before the Court on the Plaintiff's Motion for Attorneys' Fees and Expenses [Doc. 240]. For the reasons set forth below, the Court GRANTS the motion. The Clerk is directed to enter a supplemental judgment in favor of the Plaintiff against the Defendant in the amount of $592,148.31 and for post judgment interest at the legal rate from April 20, 2012.

## I. Background

The Plaintiff Anna C. Moore is a seventeen year old Medicaid beneficiary living in her family's home in Danielsville, Georgia. Due to a stroke she experienced in utero, the Plaintiff is severely disabled and suffers from a host of chronic conditions, including spastic quadriplegic cerebral palsy, refractory seizure disorder, mental retardation, gastroesophageal reflux disease, cortical blindness, dysphagia, bone cartilage disease, scoliosis, kyphosis, and restrictive lung disease. (Compl. ¶ 8.) In summary, she "has severe physical disabilities including spinal deformities in two directions, she is blind and non-verbal, she has seizures that are difficult to control with multiple medications, she has difficulty swallowing even her own saliva, she has difficulties with breathing consistently, she is cognitively impaired, and she has a host of other physical manifestations and medical complications as a result of the damage in her brain." (Id., ¶ 9.) She requires around the clock monitoring, care and treatment.

Since 1998, when she was three years old, the Plaintiff has received Medicaid-funded nursing services from Georgia's Department of Community Health ("the Department") and its predecessor agencies. Under the Medicaid Act, a participating state is required to provide certain categories of care to eligible children, including early and periodic screening, diagnostic and treatment services ("EPSDT"). In

Georgia, a child who is enrolled as a member of the Georgia Pediatric Program[1] is eligible to receive private duty nursing services.[2] While the Plaintiff has been enrolled in the Georgia Pediatric Program, the Department has approved her to receive private duty nursing services in her home. On November 15, 2006, the Department notified the Plaintiff that her hours of approved skilled nursing services were being reduced from 94 to 84 hours per week effective December 7, 2006. Through her mother, she immediately appealed this reduction, and a hearing was scheduled. The day before the hearing, however, she withdrew her request and filed this section 1983 action, seeking declaratory and injunctive relief against the Department. She claims that the Department's policies conflict with the EPSDT provisions in the Medicaid Act and violate the Constitution. This Court granted partial summary judgment to Moore, and the United States Court of Appeals for the Eleventh Circuit reversed the decision and remanded the case. This Court granted summary judgment to Moore a second time, and the United States Court of Appeals for the Eleventh Circuit reversed the decision

---

[1]This is a Georgia Medicaid program that provides continuous skilled nursing care to medically fragile children.

[2]Private duty nursing service is defined as "nursing services for recipients who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility." 42 C.F.R. § 440.80. These services are provided by a registered nurse or nurse practitioner under the direction of the recipient's physician at either the recipient's home, a hospital, or a skilled nursing facility. Id.

and remanded the case again. This Court then held a trial after which it entered a declaratory judgment in favor of the Plaintiff, stating that the reduction of her skilled nursing hours from 94 per week to 84 per week was a violation of the Medicaid Act enforceable under 42 U.S.C. § 1983, and denied the Plaintiff's request for injunctive relief as moot [Doc. 239]. On July 13, 2012, the Plaintiff filed this Motion for Attorneys' Fees and Expenses [Doc. 240].

## II. Discussion

42 U.S.C. § 1988 provides that "[i]n any action or proceeding to enforce a provision of section[]...1983..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs..." 42 U.S.C. § 1988(b). Like other fee shifting statutes, the statute is interpreted broadly because it is remedial in nature and facilitates private enforcement of civil rights. Williams v. City of Fairburn, Ga., 702 F.2d 973, 976 (11th Cir. 1983). Although awarding attorney's fees is within the discretion of the trial court, such discretion is a narrow one in that attorney's fees should be denied only when special circumstances would render an award unjust, Solomon v. City of Gainesville, 796 F.2d 1464, 1466 (11th Cir. 1986), or the statute is being subverted into a ruse for providing "windfalls" to attorneys. Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1192 (11th Cir. 1983). Importantly, one need not succeed on all claims in order to obtain attorney's

fees.  <u>Solomon</u>, 796 F.2d at 1466-67.

      A.     <u>Prevailing Party</u>

A party is not a prevailing party if it only "conceivably could benefit" from the court's judgment.  <u>Barnes v. Broward County Sheriff's Office</u>, 190 F.3d 1274, 1278 (11th Cir. 1999).  There must exist evidence that the court's judgment "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  <u>Farrar v. Hobby</u>, 506 U.S. 103, 111-112 (1992).  Thus, a party that succeeds on the merits nonetheless is not a prevailing party for the purpose of attorney's fees if it does not directly benefit from the court's order at the time it is rendered.  <u>See</u> <u>Hewitt v. Helms</u>, 482 U.S. 755, 763-64 (1987) (noting that plaintiff was not prevailing party because he did not directly benefit from final judgment at the time it was entered).  To be a prevailing party for purposes of attorney's fees, the plaintiff "need only prevail on one significant issue."  <u>Ruffin v. Great Dane Trailers</u>, 969 F.2d 989, 992-93 (11th Cir. 1992).  The Plaintiff is the prevailing party in this action.  As a result of the litigation, her nursing hours were maintained at 94 hours per week over the course of five and one half years of litigation.  She succeeded when the Court entered a declaratory judgment that the reduction of her skilled nursing hours from 94 to 84 per week was a violation of the Medicaid Act.  This was a significant issue–it was the primary basis for the Plaintiff's

suit.  (See Compl.)  Therefore, with this threshold met, the Court now turns to the task of calculating a reasonable attorney's fees award.

### B.    The Lodestar Amount

The Plaintiff seeks a total attorney's fee award of $602,348.31, which consists of $591,591.50 for attorney's fees and $10,756.81 in expenses.  This represents a reduction of $14,952.50 in fees and $1,293.26 in expenses in response to the Defendant's objections.  The Defendant opposes the motion.  The Defendant argues that this Court should reduce the Plaintiff's request for attorney's fees on several grounds, which are discussed below.

In Hensley v. Eckerhart, 461 U.S. 424, 433-37 (1983), and Blum v. Stenson, 465 U.S. 886, 896-97 (1984), the Supreme Court established the framework and methodology for calculating the amount of a reasonable attorney's fee award.  The starting point for calculating reasonable attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorney's services.  Hensley, 461 U.S. at 433; Blum, 465 U.S. at 897; accord ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999).  This produces the "lodestar" amount.  Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 563 (1986).  After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the

necessity for an adjustment based upon the results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988).

The fee applicant is the party that "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Id. at 1303; ACLU v. Barnes, 168 F.3d at 427; accord Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc., 207 F.3d 1247, 1252 (11th Cir. 2000).

> That burden includes supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

ACLU v. Barnes, 168 F.3d at 427 (quotation marks and citations omitted). These obligations of the fee applicant are especially important in cases where the applicant has only partially succeeded in the suit. Hensley, 461 U.S. at 437.

Similarly, a party opposing a fee application also has obligations. Its objections and proof must be specific and "reasonably precise." Id. at 428. When the parties fulfill their obligations, this assists the court in fulfilling its duty to render an

order that articulates both its decisions and reasons for the decisions, thus allowing for meaningful appellate review. Id. at 428-29; see also Coastal Fuels, 207 F.3d at 1252 ("[W]e have said that a court's order on attorney's fees must allow meaningful appellate review."); NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1335 (11th Cir. 1987) ("A prerequisite for our review of an attorney's fee award is that the district court's opinion must have explained the reasons for the award with 'sufficient clarity to enable an appellate court to intelligently review the award.'").

### 1.    Reasonable Hourly Rate

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." Norman, 836 F.2d at 1299. Reasonable hourly rates are to be measured by the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Id. at 895 & n.11; ACLU v. Barnes, 168 F.3d at 436. The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive. Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000) ("What [the attorney] charges clients is powerful, and perhaps the best, evidence of

his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'"); see also National Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("The best evidence would be the hourly rate customarily charged by the affiant himself or by his law firm.").  A fee applicant also may provide opinion evidence of reasonable rates, which is commonly done by submitting affidavits of other attorneys in the relevant legal community.  Duckworth v. Whisenant, 97 F.3d 1393, 1396-97 (11th Cir. 1996).  Finally, the court may utilize its own personal experiences and expertise to assess the lawyering skills exhibited during the pendency of the case.  Id. at 1397 ("This court has also been given ample opportunity to assess the lawyering of this case for the Plaintiff.").  But the court cannot simply substitute its own judgment for uncontradicted evidence without an explanation and record support.  NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1334-36 (11th Cir. 1987).

The Plaintiff's counsel are Joshua Norris and Paula Miller of the Georgia Advocacy Office, and Gerald Weber.  They have submitted affidavits to support the hourly rates claimed in the motion as commensurate with counsel's billing rates for similar cases.  (Fleming Decl. ¶ 20; Miller Decl. ¶ 6; Weber Decl. ¶ 3.)  They have also submitted the affidavit of an experienced attorney in Atlanta, who has testified that the hourly rates are reasonable.  (Fleming Decl. ¶ 20.)  The Plaintiff's counsel

request an hourly rate of $400 for Paula Miller, $290 and $330 for Joshua Norris, and $475 for Gerald Weber. The Defendant argues that it is unreasonable for Paula Miller to be given a higher rater than her supervisor, Joshua Norris, who is the Director of Legal Advocacy. (Def.'s Br. in Opp'n to Pl.'s Mot. for Attorneys' Fees, at 21.) The Defendant requests that Paula Miller's rate be reduced to $330 per hour. (Id.) The Court is not inclined to penalize the Plaintiff's counsel for requesting a lower hourly rate for another lawyer by engaging in such a comparison.[3] Judged on her own experience, reputation, and ability, Paula Miller's requested hourly rate of $400 per hour is reasonable. (Miller Decl. ¶¶ 2-5.) The Defendant offers no expert evidence to support his claim that Ms. Miller's hourly rate is unreasonable. The hourly rates claimed in the motion are deemed reasonable.

2.    Reasonable Hours

"Fee applicants must exercise what the Supreme Court has termed 'billing judgment.'" ACLU v. Barnes, 168 F.3d at 428. This means that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" because, for example, the case is overstaffed. Hensley, 461 U.S. at 434. Work performed by multiple attorneys,

_____

[3]If the Court were inclined to compare the relative experience of Paula Miller and Joshua Norris, it would find that the former has been a lawyer for nine more years than the latter. (Miller Decl. ¶ 2; Norris Decl. ¶ 3.)

however, is not subject to reduction where the attorneys were not unreasonably doing the same work.  Jones v. Central Soya Co., 748 F.2d 586, 594 (11th Cir. 1984); Johnson v. University College of University of Alabama, 706 F.2d 1205, 1208 (11th Cir. 1983).

As to the work performed, compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorney's fees.  See City of Riverside v. Rivera, 477 U.S. 561, 573 n.6 (1986) (allowing compensation for productive attorney discussions and strategy conferences); Webb v. Board of Educ. of Dyer County, Tenn., 471 U.S. 234, 243 (1985) (allowing compensation for pre-litigation services in preparation of suit); Cruz v. Hauck, 762 F.2d 1230, 1233-34 (5th Cir. 1985) (allowing compensation for preparing and litigating fee request); Adams v. Mathis, 752 F.2d 553, 554 (11th Cir. 1985) (holding that measures to enforce judgment are compensable); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 & n.5 (2d Cir. 1983) (allowing compensation for background research and reading in complex cases); Brewster v. Dukakis, 544 F. Supp. 1069, 1079 (D. Mass. 1982) (compensating for

negotiation sessions), aff'd as modified, 786 F.2d 16, 21 (1st Cir. 1986).  Reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis, although the rate may be reduced if no legal work was performed during travel. Johnson, 706 F.2d at 1208.  As with attorneys' work, the hours expended by paralegals, law clerks, and other paraprofessionals are also compensable to the extent these individuals are engaged in work traditionally performed by an attorney. Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989); Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988).  In short, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988" and "the standard of reasonableness is to be given a liberal interpretation."  NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1337 (11th Cir. 1987) (quoting Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1192 (11th Cir. 1983)).

The Eleventh Circuit has stated that its decisions regarding attorney's fees "contemplate a task-by-task examination of the hours billed" and that applicants should "show the time spent on the different claims."  ACLU v. Barnes, 168 F.3d at 427, 429.  The Eleventh Circuit has also stated that where a fee application and supporting documents are voluminous, a district court is not required to engage in an

hour-by-hour analysis of the fee award.  Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994).  In such cases, it is sufficient for the district court to determine the total number of hours devoted to the litigation and then reduce that figure by an across-the-board percentage reduction if such a reduction is warranted.  Id.  The Eleventh Circuit has even intimated that such a method may be the preferred course with a voluminous fee request to avoid waste of judicial resources.  Id.  The Supreme Court has also stated:

> The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment.  This discretion, however, must be exercised in light of the considerations we have identified.

Hensley, 461 U.S. at 436-37; accord Popham v. City of Kennesaw, 820 F.2d 1570, 1579-81 (11th Cir. 1987) ("[T]he Supreme Court explicitly stated that a court could simply reduce the award to account for the plaintiff's limited success instead of eliminating hours specifically expended on unsuccessful claims.").

The supporting documentation filed by the Plaintiff's counsel is very detailed, breaking down performed tasks into increments as small as fifteen minutes.  The Plaintiff provides several affidavits supporting its fee application, while the Defendant provides only briefing in response.

The fee application and supporting documents are voluminous, with Miller

requesting 1096.7 hours, Norris requesting 481.55 hours, and Weber requesting 40.3 hours after self-imposed downward adjustments in response to the Defendant's objections. (Pl.'s Reply Br., at Ex. C.) After reviewing the Plaintiff's counsel's declarations and affidavits, and the briefs, the Court finds that the hours claimed by the Plaintiff's counsel are mostly reasonable, and a substantial downward adjust is unwarranted. The Court will address each area of contention and explain its reasoning below:

### a.    Vague and Noncompensable Entries

The Court finds that the Plaintiff's counsel's time sheets are detailed and comprehensive. There are some hours listed that are noncompensable, but these are also very few, and the Plaintiff's counsel have agreed to reduce them. These include administrative functions such as copying Department documents, which the Plaintiff agreed to eliminate. (Miller Decl., Ex. B, at 24); (Pl.'s Reply Br., at 7.) The hours that the Plaintiff's counsel spent strategizing with outside counsel on relevant issues are compensable. See Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 392 (S.D.N.Y. 2000). However, 16.5 hours for "analysis of prior OSAH actions involving Callie" by Ms. Miller are noncompensable and the fee request should be reduced by $6,600.00.

### b.    Excessive Hours

To enable the Court to calculate the lodestar, the movant must demonstrate not only that the claimed hours were actually expended, but also that the applicant has exercised "billing judgment" and made a good faith effort to exclude from a fee request any hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude such hours from his fee submission to his client. Hensley, 461 U.S. at 440. Thus, the Plaintiff's counsel were required to exclude those hours from their fee application "that would be unreasonable to bill a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301. When determining whether the Plaintiff's counsel claimed excessive hours, the Plaintiff's counsel's "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." Perkins v. Mobile Hous. Bd., 847 F.2d 735, 738 (11th Cir. 1988).

The Defendant has not shown that any of the Plaintiff's entries were obviously and convincingly excessive. The Defendant presents no affidavits to support his contention that various entries were excessive. The Defendant does point out two entries that on the surface appear excessive. First, the Plaintiff's counsel state that they spent 60.4 hours drafting the jointly-drafted pre-trial order. (Miller Decl., Ex. B,

at 6; Miller Decl., Ex. C, at 4-5.)  Second, the Plaintiff's counsel also claim that they spent 8.9 hours preparing for a thirty minute status conference.  (Miller Decl., Ex. B, at 2.)  Yet, after reviewing the Plaintiff's explanation for these hours, the Court finds that they are not obviously excessive.  (Pl.'s Reply Br., at 10-11.)  The claim for 9 hours for Ms. Miller to "meet Callie" is excessive and the fee request should be reduced by $3,600.00.

### c.    Complaint and Amended Complaint

The Plaintiff's counsel seek 62.5 hours associated with the initial pleadings, and 10.75 hours associated with drafting the Amended Complaint.  The Court dismissed the Supremacy Clause claim in the Complaint [Doc. 15].  Some claims in the Amended Complaint were unsuccessful because the Plaintiff did not make a specific request for relief [Doc. 132].  Yet, these claims involved "a common core of facts" and "[m]uch of counsel's time [was] devoted to the case as a whole...such a lawsuit cannot be viewed as a series of discrete claims." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).  These claims were not "distinct in all respects" from the successful claims.  Id. at 440.  Therefore, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. at 435.  "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.  Litigants in

good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Id. In this case, the Court granted the Plaintiff a declaratory judgment that the reduction of her skilled nursing hours from 94 per week to 84 per week was a violation of the Medicaid Act enforceable under 42 U.S.C. § 1983 [Doc. 236]. The Court granted the Plaintiff the substantial relief she requested because she established by a preponderance of the evidence that the 94 private duty nursing hours are medically necessary. The only reason that injunctive relief was denied was that the litigation had dragged on for so long that such relief could not be granted without a current evaluation of her condition and needs. The Court will not reduce the award of attorney's fees for time spent on related arguments and claims.

### d.    Second Motion for Preliminary Injunction

The Plaintiff's counsel claim approximately 56.25 hours related to the preparation of the Second Motion for Preliminary Injunction or Temporary Restraining Order. The purpose of the motion was to keep Callie's nursing hours at 94 hours per week during the litigation. The Defendant claims that he agreed to keep the nursing hours for Callie at 94 per week, yet the Plaintiff insisted on having the injunction hearing regardless [Doc. 36]. The Plaintiff claims that the Defendant never offered to keep the Plaintiff's hours in place while litigation was ongoing until that

representation was made in open court during the hearing on the Second Motion for Preliminary Injunction. (Second Miller Decl. ¶ 13; Pl.'s Reply Br., at 15.) The Defendant has not provided the Court with any factual evidence to support his assertion, so the Court will not deduct time for the motion.

e.     Fees Related to Depositions

The fees associated with depositions necessarily obtained for use in the case are properly charged to the Defendant. "A deposition taken within the proper bounds of discovery...will normally be deemed to be 'necessarily obtained for use in the case,' and its cost will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged." Fulton Federal Sav. & Loan Ass'n of Atlanta v. American Ins. Co., 143 F.R.D. 292, 296 (N.D. Ga. 1991). "However, deposition costs incurred merely for the convenience of a party or a party's attorney, for purposes of investigation, or simply to aid in thorough preparation are not taxable." Id. The Court finds that the depositions of Cynthia Price, Agartha Russell, and Mark Trail were necessarily obtained for use in the case. The Court finds the Plaintiff's counsel's defense of these depositions to be persuasive. (Second Miller Decl. ¶¶ 14-16.)


f.     Motion for Extension of Time to Complete Discovery

The Plaintiff filed a motion for extension of time to complete discovery; the Defendant contends that this motion was unnecessary as the Plaintiff did not conduct any further discovery after obtaining the extension [Doc. 58]. However, the Plaintiff's counsel contends that she received documents under seal as a result of the extended discovery. (Second Miller Decl. ¶ 18.)

3.      Adjustment to the Lodestar

Once the lodestar is obtained, the court may then adjust it upwards or downwards. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Blum v. Stenson, 465 U.S. 886, 897 (1984); ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999); Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988). The Supreme Court and Eleventh Circuit have stated that while the adjustment may be based on a number of factors, the most important factor is the results obtained. Hensley, 461 U.S. at 434; Norman, 836 F.2d at 1302. The Supreme Court has warned, however, that upward adjustments are rarely warranted because the factors on which a prevailing party typically seeks an enhancement already have been considered by the court in determining the reasonable hourly rate:

> Expanding on our earlier finding in Hensley that many of the Johnson factors "are subsumed within the initial calculation" of the lodestar, we specifically held in Blum that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve

as independent bases for increasing the basic fee award.

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986).

The Plaintiff does not request an upward adjustment to the lodestar, nor does the Court believe that an upward adjustment would be appropriate. The results obtained, as one of the Johnson factors, normally will be subsumed in the calculation of a reasonable fee and, therefore, usually should not provide an independent basis for increasing the fee award. Blum v. Stenson, 465 U.S. 886, 900 (1984); accord NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1337 (11th Cir. 1987). The Defendant's arguments for a reduction in the award of attorney's fees, which were rejected, were properly considered in the above sections determining the lodestar as the product of the reasonable hourly rate and reasonable hours. A downward adjustment to the lodestar is not appropriate.

C.    Reasonable Expenses

The Plaintiff is entitled to recover all reasonable and necessary expenses. Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983). With respect to expenses, "the standard of reasonableness is to be given a liberal interpretation." Id.; Loranger v. Stierheim, 3 F.3d 356, 363, vacated on other grounds, 10 F.3d 776 (11th Cir. 1994). The Defendant objects to the $114.95 charge for court reporter fees,

$828.31 charge for copies of deposition exhibits and copies of documents for Department discovery, and $350.00 charge for extra costs associated with subpoenas. The Plaintiff has agreed to eliminate these expenses, and the requested expenses figure of $10,756.81 reflects this reduction. The Defendant also objects to deposition costs associated with such items as the cost of expediting transcripts, word indexes, ASCII disks, condensed manuscripts, and transcript binders. The Court agrees with the Plaintiff that these deposition costs are reasonable, consistent with normal billing practices, and not obviously excessive.

## III.  Conclusion

For the reasons set forth above, the Plaintiff's Motion for Attorneys' Fees and Expenses [Doc. 47] is GRANTED in the amount of $592,148.31. The Clerk is directed to enter a supplemental judgment in favor of the Plaintiff against the Defendant in this amount and for post judgment interest at the legal rate from April 20, 2012. See Georgia Ass'n of Retarded Citizens v. McDaniel, 855 F.2d 794, 799 (11th Cir. 1988).

SO ORDERED, this 31 day of October, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge